EDWARDS, Judge.
At 11:15 P.M. on January 29, 1978, Randall L. Romine was a crewman on board the tugboat, “Edith,” owned by Cajun Marine Service, Inc. The Edith was pushing barge DXE 1107, owned by Dixie Carriers, Inc., in a westerly direction in the Intracoastal Canal near Morgan City. Earlier that evening, four loaded barges, including OBL 22, owned by Ohio Barge Line, Inc., had been towed by the tugboat, “Olivette,” owned by Otto M. Lipscomb, Inc., to a point along the south bank of the canal where they were moored to another barge parallel to the canal bank. The Olivette had then left the scene for engine repairs. Shortly after 11:15 P.M., barge DXE 1107, being pushed by the Edith, collided with Barge OBL 22, *1359 eastern-most of the Olivette tow. As a result of the collision, Randall L. Romine suffered personal injuries and the barge DXE 1107 was damaged.
Romine brought suit for $1,081,000, interest and costs against Cajun Marine Service, Inc. (Cajun), Cajun’s insurer, Highlands Insurance Company (Highlands), Dixie Carriers, Inc. (Dixie), Ohio Barge Line, Inc. (Ohio), and Otto M. Lipscomb, Inc. (Otto).
Highlands intervened against Romine and all defendants seeking subrogation for any amounts paid to Romine.
Ohio, Cajun, Highlands and Dixie filed third party petitions against Otto.
In a separate suit for property damage to the barge DXE 1107, Dixie sought $20,280, interest and costs from Otto, Ohio and various other defendants. Ohio named Otto and Otto named Cajun as third party defendants.
Following consolidation of the two suits, trial by civil jury was had. On September 12, 1979, the jury unanimously rendered its verdict by special interrogatories. Cajun was found negligent, Otto was found not negligent, Romine was awarded $16,000 in damages, and Dixie was allowed nothing for the loss of use of barge DXE 1107. (Damages to DXE 1107 had already been stipulated to by the parties.)
Judgment was in accordance with the jury verdict. Cajun and Highlands were cast for $16,000, interest and costs. Ro-mine’s demands against the other defendants were denied as were the third party claims of Ohio, Cajun, Highlands and Dixie and the intervention of Highlands. The claims of all parties relating to DXE 1107’s property damage were denied. Highlands subsequently paid the judgment to Romine who assigned all his rights against the remaining defendants to Cajun and Highlands.
After a motion for new trial was denied, Cajun, Highlands and Dixie took this appeal.
Appellants’ basic contention is that the Olivette tow had become unmoored and drifted out into the path of the Edith’s tow. The OBL 22 was allegedly low in the water and not properly lighted. Appellees deny that the Olivette tow ever moved from its position parallel to the canal bank.
Appellants specify that the trial court erred in:
1) refusing to allow the jury to consider the log of the Olivette;
2) refusing to submit certain charges to the jury;
3) adopting a jury verdict which was contrary to the law and the evidence.
While Roy Bond Henson, an employee of Otto, was testifying, appellants sought to introduce as evidence certain portions of the Olivette’s log, in particular a diagram dated June 29, 1978, which purports to portray the accident scene. The trial court refused to allow the introduction which was then made a proffer.
We agree with the trial court’s exclusion of this proffered evidence. The diagram’s author, C. A. Legaspi, was not present in court to testify. Henson was the vehicle whereby introduction was sought. However, as noted by the trial court, the diagram was not even an accurate reflection of Henson’s perception of the accident scene. Accordingly, the diagram was properly rejected as being both inaccurate and hearsay. In passing, we note that the diagram sought to be introduced is not only uncorroborative of appellants’ version of the accident but also tends to refute same.
Appellants proposed two special charges which were rejected by the trial court.[1] Both charges dealt with vessels “underway” and were rejected because no evidence at all was presented which showed the Olivette tow to be underway. Even appellants’ proffer, the diagram from the *1360 Olivette’s log shows the tow attached to the shore. Only the number of lines and angle to the bank were at issue.
A charge, even if it is a correct statement of the law, must be based on evidence adduced in the case in order for the jury to make the conclusion permitted in the charge. Jackson v. West Jefferson General Hospital, 245 So.2d 724 (La.App. 4th Cir. 1971). It was not, therefore, error for the trial court to refuse appellants’ charges.
Appellants contend that the jury verdict was contrary to the law and the evidence. We disagree.
Appellants’ claims of legal error to the contrary, we find that this ease essentially amounted to a struggle for credibility. The jury saw the witnesses and evidence, heard all the testimony and apparently did not believe defendants’ explanations for why the Edith’s tow struck barge OBL 22. There is no reason to disturb the jury’s findings.
A careful review of the entire record convinces us that there was sufficient evidence on which the jury could base a finding of negligence on the part of appellants. Arceneaux v. Domingue, 365 So.2d 1330 (1978).
Por the foregoing reasons, the trial court judgment is affirmed. All costs of these proceedings, both trial and appellate, are to be paid by Cajun Marine Service, Inc., Highlands Insurance Company and Dixie Carriers, Inc.
AFFIRMED.

. Proposed Charge A
“A vessel is ‘underway,’ within the meaning of these rules, when she is not at anchor, or made fast to the shore, or aground.”
*1360 Proposed Charge B
“A vessel ‘underway’ is required to carry a red light on its starborad bow, a green light light (sic) on its port bow, a bright white light on its fore part and an afterlight being carried at an elevation of at least 15 feet above the light at the head of the vessel.”